Erich P. Wise (State Bar No. 63219)
erichw@fdw-law.com
Aleksandrs E. Drumalds (State Bar No. 237101)
aleksd@fdw-law.com
FLYNN, DELICH & WISE LLP
One World Trade Center, Suite 1800
Long Beach, CA 90831
Telephone: (562) 435-2626
Facsimile: (562) 437-7555

George M. Chalos [Admitted *Pro Hac Vice*]
gmc@chaloslaw.com
CHALOS & Co, P.C.
55 Hamilton Avenue
Oyster Bay, New York 11771
Telephone: (516) 714-4300
Facsimile: (516) 750-9051

Attorneys for Plaintiff
O.W. BUNKER MALTA LIMITED

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| O.W. BUNKER MALTA LIMITED,<br><br>    Plaintiff,<br><br>    vs.<br><br>M/V TROGIR, her engines, boilers, tackles, etc., *in rem*,<br><br>    Defendant. | CASE NO.: CV12-05657R (FFMx)<br><br>IN ADMIRALTY<br><br>**UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW** |

On January 7, 2013, this Court granted Plaintiff O.W. BUNKER MALTA LIMITED's ("O.W. Bunker" or "Plaintiff") motion for summary judgment (*see* Dkt. #54). The Court ordered from the bench that "Plaintiff shall submit proposed uncontroverted facts and conclusions of law and a proposed judgment." *Id.* Pursuant to the Court's Order, Plaintiff hereby submits the following [Proposed] Uncontroverted Facts and Conclusions of Law.

## UNCONTROVERTED FACTS

1. O.W. Bunker is a foreign corporation engaged in the business of providing maritime necessaries to ships, namely bunkers.

2. On or about December 1, 2011, O.W. Bunker entered into an agreement with National Commodity Operators S.A. (hereinafter "National Commodity"), on behalf of the M/V TROGIR (hereinafter "the Vessel"), to provide 589.248 metric tons of bunker fuel and 66.14 metric tons of marine gas oil for delivery to the Vessel at the foreign port of Basuo, China between the period of December 3 through December 6, 2011.

3. The agreement expressly provided that the sale and delivery of the marine fuels by O.W. Bunker to the M/V TROGIR would be subject to O.W. Bunker Group's Terms and Conditions for Sale of Marine Bunkers.

4. The forum selection and choice of law clause contained in O.W. Bunker Group's Terms and Conditions provided, in pertinent part, that "[f]or the sole benefit of the Seller it is further agreed that the Seller . . . [has] the right to proceed against the Buyer, any third party, or the Vessel in such jurisdiction as the Seller in its sole discretion sees fit inter alia for the purpose of securing payment of any amount due to the Seller from the Buyer . . . . In such circumstances, the proceedings shall be governed by the law (substantive and procedural) of such jurisdiction)."

5. On December 6, 2011, O.W. Bunker duly delivered 589.248 metric tons of

CHALOS & Co, P.C.

IFO cst bunker fuel and 66.414 metric tons of marine gas oil DMA to the M/V TROGIR at the foreign port of Basuo, China.

6. The bunker delivery receipts for the transaction bear the signature of the Chief Engineer and the seal of the M/V TROGIR.

7. By signing the bunker delivery receipts, the Chief Engineer of the M/V TROGIR accepted the bunkers on behalf of the Vessel.

8. The M/V TROGIR subsequently consumed the bunkers delivered at the port of Basuo.

9. In accordance with O.W. Bunker's internal procedures, the bunker delivery receipts for the transaction were sent to Plaintiff's accounting department as proof of the exact quantity of fuel supplied and the precise date when delivery took place.

10. Nobody within O.W. Bunker's organization outside of its accounting department reviewed the bunker delivery receipts or had knowledge of their contents.

11. Neither the Vessel nor her Owner took affirmative actions to notify any of O.W. Bunker's employees with the ability to affect bunker negotiations that National Commodity and/or the Vessel's charterer, Arcadia Services Limited, was not authorized to bind the Vessel to the bunker supply contract.

12. On December 21, 2011, Plaintiff issued an invoice to National Commodity, on behalf of the M/V TROGIR, for the balance of the purchase price for the bunker fuel supplied to the Vessel at Basuo.

13. Despite being duly invoiced for the bunker fuel supplied to the Vessel at Basuo, the outstanding principal balance of USD 438,248.34 (plus interest and costs) remains due and owing to O.W. Bunker.

14. On July 1, 2012, the M/V TROGIR was arrested by O.W. Bunker at the Port of Los Angeles.

15. On or about July 17, 2012, the Owners of the Vessel, Specially Appearing

Claimant Trogir Maritime Inc., arranged for substitute security to be posted in an escrow account, and the Vessel was released from arrest.

## CONCLUSIONS OF LAW

16. "If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d).

17. Because Defendant and Specially Appearing Claimant asked the Court to consider materials outside of the pleadings, the parties' respective motions should be treated as cross-motions for summary judgment. FED. R. CIV. P. 12(d).

18. Analysis of the parties' cross-motions for summary judgment follows the framework set forth by the Ninth Circuit Court of Appeals in *Trans-Tec Asia v. M/V HARMONY CONTAINER*, 518 F.3d 1120 (9th Cir. 2008).

19. Under *Trans-Tec*, the Court's first step is to determine the law applying to the formation of the contract. *Id.* at 1123-24.

20. Applying the multi-factor test set forth by the United States Supreme Court in *Lauritzen v. Larsen*, 345 U.S. 571 (1953), Croatian law applies to the formation of the contract.

21. The Court's second step is to look to whether the choice of law and forum selection clause was validly incorporated in the terms of the contract. *Trans-Tec*, 518 F.3d at 1124.

22. It is irrelevant that under Croatian law the Vessel could not be a party to the contract, as a maritime lien arises by operation of law, not by contract. 46 U.S.C. § 31342.

23. Both the time charterer, Acadia Services Limited and Plaintiff, O.W. Bunker, are sophisticated international shipping and supply companies, and the evidence demonstrates that the contract was entered at arm's length in the absence of fraud or undue influence.

CHALOS & Co, P.C.

24. Further, at all times the law governing the contract was clear and unambiguous: either Danish law applied or the law of the forum where Plaintiff initiated an action applied.

25. Moreover, because Plaintiff's ability to select a forum and the applicable law was constrained by Defendant and Specially Appearing Claimant's voluntary action in moving the vessel from port to port or forum to forum, the forum selection and choice of law clause is not unconscionable or inherently inequitable under Croatian law or the laws of the United States. *Trans-Tec*, 518 F.3d at 1126.

26. The third step under *Trans-Tec* is to apply the substantive laws of the United States, specifically, the Federal Maritime Lien Act, 46 U.S.C. § 31301, *et seq.*, to determine whether O.W. Bunker acquired a maritime lien for supplying fuel bunkers to the M/V TROGIR. *Trans-Tec*, 518 F.3d at 1124.

27. Under the Federal Maritime Lien Act, a lien arises by operation of law against a vessel if there is a supply of necessaries to the vessel and there is authority to bind the vessel to the lien. 46 U.S.C. § 31342.

28. Fuel bunkers are "necessaries" within the meaning of § 31342. *Trans-Tec*, 518 F.3d at 1127 n. 9.

29. Further, under the Federal Maritime Lien Act, there is a statutory presumption that a charterer has authority to subject the vessel to a maritime lien. 46 U.S.C. § 31341.

30. This statutory presumption may be rebutted only if the defendant can demonstrate that the supplier of the necessaries had actual knowledge of the charterer's lack of authority to bind the vessel. *See Lake Union Drydock Co. v. M/V POLAR VIKING*, 446 F. Supp. 1286, 1291 (W.D. Wash. 1978).

31. Anti-lien stamps and provisions in the charterer or ship owner's contract are generally insufficient to show that a supplier had actual knowledge. *See, e.g.*, *Gulf*

*Oil Trading Co. v. M/V FREEDOM*, 1985 U.S. Dist. LEXIS 23790 (D. Or. 1985); *American Oil Trading, Inc. v. M/V SAVA*, 47 F. Supp. 2d 348 (E.D.N.Y. 1999); *Empire Scott Stevedoring, Inc. v. M/V STEVNS PEARL*, 1998 U.S. Dist. LEXIS 14607 (E.D. La. 1998).

32. To demonstrate that a supplier had actual knowledge of the charterer's lack of authority to bind the vessel, there must be some affirmative communication by the Vessel or her Owner to one of the supplier's employees who has the ability to effect the negotiations and the contract prior to the time the contract is entered into. *Gulf Oil Trading Co. v. M/V CARIBE MAR*, 757 F.2d 743 (5th Cir. 1985).

33. Defendant and Specially Appearing Claimant have presented no evidence that Plaintiff's employees, outside of the accounting department, actually read the anti-lien stamps on the bunker delivery receipts or had actual knowledge of it.

34. Defendant and Specially Appearing Claimant have failed to provide more than a mere scintilla of evidence that Plaintiff O.W. Bunker had actual knowledge that the charterer lacked authority to bind the Vessel and, as such, have failed to create a genuine dispute of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

35. There is no genuine dispute regarding O.W. Bunker's actual knowledge to rebut the statutory presumption of the charterer's authority to bind the M/V TROGIR to the bunker supply contract.

36. Accordingly, a maritime lien arose by operation of law upon transfer of the marine bunkers from Plaintiff to the Defendant Vessel; Plaintiff's motion for

summary judgment should be granted; and Defendant's motion for summary judgment should be denied.

Dated: Jan. 29, 2013

_____
MANUEL. L. REAL
UNITED STATES DISTRICT JUDGE

//
//

Dated: January 18, 2013                Respectfully Submitted,

CHALOS & Co, P.C.

By:   /s/ George M. Chalos
      [Admitted Pro Hac Vice]

      - and -

FLYNN, DELICH & WISE LLP

By:   /s/ Aleksandrs E. Drumalds
      Erich P. Wise
      Aleksandrs E. Drumalds


Attorneys for Plaintiff
O.W. Bunker Malta Limited

[PROPOSED] UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW        CASE NO. CV12-05657R (FFMx)